## 17167.  SEALY, administrator, *v.* PIERCE.

1. It can not be said that the verdict of the jury, upholding the contention of the plaintiff with respect to the disputed terms of the contract under which the machinery sued for was delivered, was unauthorized by the evidence. While the evidence as to the subsequent conduct of the plaintiff seemed to indicate the truth of defendant's contention, the evidence for the defendant himself altogether fails to establish the contention relied upon by him.
2. Moreover, irrespective of any lack of proof upon the question of insolvency, under the evidence submitted the entire dispute hinged upon the question as to whether, under the subsequent new agreement, the sawmill was loaned by the plaintiff to the defendant in settlement of the difference between them, or whether it was sold and delivered for such purpose.
3. No error is shown, the other defenses set forth by the plea being in no wise sustained by the evidence.

DECIDED JULY 20, 1926.

Trover; from city court of Arlington—Judge E. L. Smith. November 23, 1925.

*Terry Hendricks, A. L. Miller,* for plaintiff in error.

*R. R. Jones,* contra.

JENKINS, P. J.   Pierce sued Sealy, as administrator of Rambo, in trover for the recovery of a sawmill.   It appears that, prior to the death of Sealy's intestate, Pierce had entered upon an agreement with Rambo to use his sawmill, engine and boiler, in sawing certain timber for Rambo at an agreed price; and that pending the preparations made to carry this contract into effect, Rambo had made certain advances to Pierce for the purpose of enabling him to set up and repair the machinery and mill.   After the death of Rambo, and prior to the appointment of Sealy as administrator, Pierce abandoned the performance of the contract previously entered upon with Rambo, and subsequently turned over to Sealy, the administrator, his engine, boiler, and sawmill, in order that they might be used by the administrator for the sawing in contemplation.   The dispute hinges upon the terms of the agreements by which this property was delivered; whether, as contended by the plaintiff, the machinery was loaned to the administrator for the purpose indicated, in settlement of the advances previously made to the plaintiff and all matters of dispute between them, or whether, as contended by the defendant administrator, the engine

Replevin, 34 Cyc. p. 1507, n. 59; p. 1521, n. 70.

and boiler were loaned, and the sawmill, which constitutes the subject-matter of the present litigation, was sold and delivered to the administrator, in settlement of such differences. It appears that after the administrator had completed his work of sawing with the machinery received from Pierce, Pierce received back the engine and boiler, but that the administrator sold the sawmill to another person, and thereupon gave credit to Pierce for the amount of the purchase-price on the debt owing by Pierce for the advances referred to; that after the sale by the administrator to the purchaser of the sawmill, Pierce was employed by the latter to set up the mill for him; and that he made no claim to the mill on his own behalf. The evidence of Pierce sustained his contention that the entire machinery, engine, boiler, and mill, was loaned to the administrator in settlement of the difference between them. While the administrator testified that when the sawmill, together with the engine and boiler, was turned over to him, Pierce said "we could have the sawmill, and use the boiler, engine, and mill to saw the timber for what he owed," he nevertheless repeatedly testified: "I would not make any agreement with him." And it further appears from the evidence already indicated that the sawmill was not received or accepted in settlement of the accounts of Pierce; for when it was subsequently sold to a third person the administrator testified that he then gave credit to the plaintiff on what was owing by the latter.

The jury found in favor of the contention of the plaintiff, and allowed him to recover a money verdict for the proved value of the sawmill. The defendant's motion for a new trial was overruled, and he brings error. By his plea it was sought to recoup damages on account of the abandonment of the original contract for sawing, entered upon by the plaintiff and defendant's intestate, it being alleged that under a subsequent contract made for the sawing an additional rate of $2 per thousand feet of lumber had to be paid, which damages were sought to be set off in the present action; and exception is taken to the charge of the court with reference to this defense as follows: "I charge you that the defendant sets up as a defense that the plaintiff failed to carry out the contract alleged to have been made between himself and C. J. Rambo, and that it became necessary for the defendant to employ another party to carry out the contract at the expense of $2 per

thousand feet of lumber more than the plaintiff contracted to saw the lumber for, by reason of such breach of contract on the part of the plaintiff that the defendant was damaged in the sum of $2 per thousand feet in getting the timber sawed into lumber; and the defendant contends that he is entitled to set off in such damage of $2 per thousand on 500,000 feet of lumber. I charge you that you will not be authorized to allow this set-off, for the reason that the evidence on the part of both the plaintiff and the defendant shows that the sawmill was taken over by an agreement between plaintiff and the defendant; while the evidence shows that there is a difference in the terms of agreement, at the same time the evidence shows that the mill property was taken over by the defendant by agreement, and therefore the set-off claimed would not be a legal claim against the plaintiff." While the defendant alleged the insolvency of the plaintiff, the specific testimony in support of this allegation is as follows: The plaintiff testified: "I have no sawmill now. I did have a sawmill, but I sold it. I do not pay tax on any property now. I have some money in the bank. I manage to make a living. I do not own the house where I live; that belongs to my wife; I have no property." J. R. Sealy testified that the plaintiff "was insolvent and did not have any money in which to make the repairs; he said he had no money and could not pay it; he owed the Rambo Lumber Company more than the sawmill was worth."

*Judgment affirmed. Stephens and Bell, JJ., concur.*